# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**Mario Marcus**
517 Oak Village Drive
Columbus, Ohio 43207

               **Plaintiff,**

      **v.**

**Franklin County Ohio Sheriff**
**Dallas Baldwin**
373 South High Street, Floor 2B
Columbus, OH 43215

            **Defendant.**

---

**Case No.**

**Judge:**

**Magistrate Judge:**

**COMPLAINT**
**(Jury Demand Endorsed Hereon)**

---

Mario Marcus, Plaintiff, files this Complaint, hereby stating and alleging the following:

1. Jurisdiction is proper in the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. 1331 and 1367.

2. Venue is proper in this District under 42 U.S.C. Section 2000e-5(f)(3). All acts complained of herein occurred within the State of Ohio, Federal Southern District of Ohio, Eastern Division.

3. Plaintiff filed an EEOC Charge 532-2019-01047 with the EEOC on March 7, 2019 and requested a right to sue in writing July 1, 2019 and will file said right to sue upon its receipt by Plaintiff's Counsel.

4.    Plaintiff, Mario Marcus, is an African-American who resides at 517 Oak Village Drive, Columbus, Ohio 43207.

5.    Defendant, Franklin County Sheriff Dallas Baldwin, is an employer subject to the laws of the State of Ohio and the United States of America.

6.    At all relevant times herein Plaintiff was an employee of the Defendant.

7.    Defendant is an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.*

8.    Plaintiff is an employee within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. §2000e *et seq.*

9.    Defendant is an employer within the meaning of R.C. §4112 *et seq.* The Defendant Sheriff is officially liable for R.C. §4112 employment race discrimination.

10.   Plaintiff is an employee within the meaning of R.C. §4112 *et seq.*

11.   Plaintiff was employed by the Franklin County Sheriff as a deputy on January 11, 2010, terminated May 12, 2018 and then reinstated October 8, 2018.

12.     The Plaintiff is a member of a Collective Bargaining Unit. The Defendant and the Plaintiff are both subject to a Collective Bargaining Agreement which governs the terms and conditions of employment of the Collective Bargaining Unit members.

13.     Plaintiff suffered an adverse employment action by being terminated from employment with the Defendant on May 12, 2018.

14.     Plaintiff was terminated May 12, 2018 for alleged violations of AR102:29 Unbecoming Conduct; AR102:43 Cause for Suspension or Dismissal/Unbecoming Conduct; AR102:28.1 Court Actions. All of the alleged violations arise from an incident occurring on April 1, 2017 while Plaintiff was off duty and shopping at a Kroger store. The Defendant alleges the factual allegations as set forth in Exhibit 1, attached hereto, were the basis for termination. Exhibit 1 inaccurately relates portions of the actual occurrence of events and duplicates allegations of violations.

15.     As a result of the incident in which an employee of Kroger filed a misdemeanor assault charge with the Franklin County Municipal Court, the Plaintiff agreed to pay court costs and perform 24 hours of community service and the charge was dismissed. Plaintiff complied with all terms of the dismissal.

16.     The Plaintiff filed a grievance over the termination and was reinstated effective October 8, 2018 pursuant to a Grievance Settlement signed October 1, 2018 attached hereto as Exhibit 2. The Grievance Settlement addressed no matters of discrimination

or claims pursuant to Title VII of the Civil Rights Act or Ohio Revised Code §4112 related to discrimination nor did it waive any right to pursue any or all such claims.

17. Pursuant to the Grievance Settlement, Plaintiff was to serve a 30-day unpaid suspension from May 12, 2018 through June 10, 2018. Plaintiff was repaid back pay and benefits less the 30-day unpaid suspension. For the purposes of progressive discipline and records retention, the suspension was considered only to be 15 days.

18. Plaintiff suffered further adverse actions by being assigned to corrections duties in the jail rather than patrol duties on the road while his incident was being investigated by the IAB. The result was a loss of pay associated with the appearances in Court on citations and arrests the Plaintiff would have issued and made while a patrol deputy. Arrests and citations are not made or issued by corrections deputies. While terminated Plaintiff also lost income from special duty.

19. Prior to Plaintiff's termination/suspension, Plaintiff's record for performance consistently met, or was above, expectations. In 2018 Plaintiff was considered to be a strong informal leader with 4 out of 10 categories of performance being above expectations. Plaintiff received letters of commendation and was considered a "go to guy" by his supervision.

20. During the pendency of Plaintiff's investigation, IAB 17-194, and shortly thereafter, two other white deputies were investigated for comparably serious misconduct for the

4

same violations of the rules of conduct for which Plaintiff was terminated and then ultimately suspended for 30 days.

21. On December 2, 2017 Deputy Sergeant Victor DiNardo, white, became involved in a physical altercation while off-duty in a bar in Pickerington, Ohio while watching an Ohio State football game. During the physical altercation DiNardo grabbed a female patron around the neck/shoulder area and took her to the floor. He also grabbed her by the throat/neck area. When the female attempted to leave the bar, DiNardo then grabbed her by the hair and shirt and pulled her back into the bar. DiNardo, while in custody, also told Pickerington police officers responding to the disturbance call in which DiNardo was participating, that he "would get her in his/our own way." DiNardo suffered a broken and bloodied nose as result of the altercation.

22. As a result of the incident, DiNardo was charged with Assault, Falsification, Obstructing Official Business, Unlawful Restraint and Disorderly Conduct. DiNardo pled guilty to an amended Disorderly Conduct O.R.C. §2917.11 MM from Assault O.R.C. §2903.13 and paid $150.00 fine and costs.

23. As a result of the incident, DiNardo was charged with Defendant rule violations of AR102:2 Obedience to Laws and Ordinances; AR102:29 Unbecoming Conduct; and AR102:43.1 Cause for Suspension of Dismissal/Unbecoming Conduct  / Threats / Violations of Rules, Regulations, Policies and Procedures.

5

24. After a fact finding by the Defendant's IAB unit that during the physical altercation DiNardo grabbed a female patron around the neck/shoulder area and took her to the floor; grabbed her by the throat/neck area; grabbed her by the hair and shirt pulling her back into the bar; and telling Pickerington police officers responding to the disturbance call in which DiNardo was participating, that he "would get her in his/our own way.*",*  *DiNardo was suspended for one day* for violation of AR102:2 Obedience to Laws and Ordinances; AR102:29 Unbecoming Conduct; and AR102:43.1 Cause for Suspension of Dismissal/Unbecoming Conduct  / Threats / Violations of Rules, Regulations, Policies and Procedures.

25. On March 3, 2018, Deputy Chris Andreini, white, was involved in an incident while off-duty with an assistant male softball coach at a basketball tournament being held at Cardington, Ohio Elementary School. During the incident the assistant softball coach alleged Deputy Andreini first grabbed him by the throat, pushed him back against a block wall slamming his head against the wall. Deputy Andreini is then described by the assistant softball coach as having shoved his forearm against the assistant coach's throat and moving behind him to apply a different choke hold. Deputy Andreini is described as holding onto the assistant coach as he tried to get away and then releasing him.

26. On March 5, 2018, the assistant coach filed a report with law enforcement. On May 14, 2018, the Cardington, Ohio Police provided the Defendant Internal Affairs Bureau with an investigative packet of the incident.  On May 16, 2018, Cardington Police

6

charged Deputy Andreini with O.R.C. §2903.13A, Assault, in Cardington Municipal Court.

27. On September 5, 2018 Deputy Andreini agreed to complete 80 hours of community service, personally apologize to the assistant coach, pay the assistant coach $30.00 dollars for medical expenses and pay court costs.

28. An IAB investigation by the Defendant in case number IAB 18-146 undertook interviewing and/or describing the observations of approximately 22 persons, including 3 different law enforcement agency employees in addition to Deputy Andreini, involved in the original incident. At the conclusion of its investigation, Deputy Andreini was charged with AR102:29 Unbecoming Conduct; and AR102:43 Cause for Suspension or Dismissal. Deputy Andreini was found not to have conducted himself in a favorable manner by becoming involved in a physical incident with the assistant softball coach after immediately having been involved in a civil matter with several other persons attending the game. *Deputy Andreini received a documented oral reprimand*. A documented oral reprimand is the lowest form of discipline for an employee.

29. Plaintiff was also treated in a disparate fashion as compared to DiNardo and Andreini. All three incidents for the deputies involved physical altercations. All three involved heightened emotional and verbal states affecting their conduct. Upon information and belief Plaintiff avers 1) That only he was required to attend anger management; 2) It

is the custom and practice of the Defendant to send any employee who is a causative factor in a physical altercation with another employee or civilian to an anger management program. Sending Plaintiff but not DiNardo or Andreini to anger management creates the appearance of impermissibly stereotyping the Plaintiff based on his protected class.

30. The Defendant's working environment has had a custom and practice of treating African-American deputies in a disparate fashion in the issuance of disciplinary sanctions. The treatment of DiNardo and Andreini continues this custom and practice.

**Count One: Violation Title VII of the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e, *et seq.*, Race Discrimination Disparate Treatment.**

31. Plaintiff hereby incorporates by reference Paragraphs 1 through 30 above as though fully set forth herein.

32. Plaintiff was qualified as a Patrol Deputy.

33. Plaintiff is a member of a protected class because he is African-American.

34. Plaintiff suffered an adverse employment action when he was terminated and then later reinstated with a 30-day paid suspension and ordered to attend anger management training.

8

35. Two white employees not of a protected class, Deputies DiNardo and Andreini, were treated more favorably than the Plaintiff when they engaged in the same comparable and/or more serious conduct than Plaintiff.

36. The white employees, Deputies DiNardo and Andreini, were given only a one-day suspension and Documented Oral Reprimand respectively whereas the Plaintiff was terminated, then reinstated and given a 30-day unpaid suspension.

37. Plaintiff states a disparate treatment claim under Title VII of the Civil Rights Act of 1991, as amended, 42 U.S.C. §2000e, *et seq*.

**Count TWO: Violation O.R.C. §4112, *et seq.*, Race Discrimination Disparate Treatment.**

38. Plaintiff hereby incorporates by reference Paragraphs 1 through 37 above as though fully set forth herein.

39. Plaintiff was qualified as a Patrol Deputy.

40. Plaintiff is a member of a protected class because he is African-American.

41. Plaintiff suffered an adverse employment action when he was terminated and then later reinstated with a 30-day paid suspension and ordered to attend anger management training.

9

42. Two white employees not of a protected class, Deputies DiNardo and Andreini, were treated more favorably than the Plaintiff when the white employees engaged in the same comparable and/or more serious conduct than Plaintiff.

43. The white employees, Deputies DiNardo and Andreini, were given only a one-day suspension and Documented Oral Reprimand respectively whereas the Plaintiff was terminated, then reinstated and given a 30-day unpaid suspension.

44. Plaintiff states a disparate treatment claim under O.R.C. §4112, *et seq.*, Race Discrimination Disparate Treatment.

**Prayer for Relief**

WHEREFORE, Plaintiff respectfully requests this Court to grant the following relief:

45. A judgment in favor of the Plaintiff for equitable relief of reducing his 30-day suspension to a Documented Oral Reprimand;

46. A judgment in favor of the Plaintiff for back pay in the amount of 30 days wages and benefits and damages for the loss of wages for Court appearances and special duty;

47. A judgment in favor of the Plaintiff for compensatory and punitive damages where applicable;

48. A judgment for an award to Plaintiff of his attorneys' fees and costs in bringing this action; and;

49.     Award such other relief as the Court shall deem just, proper, fair and equitable.

Respectfully Submitted,

*s/Daniel H. Klos*
Daniel H. Klos (0031294)
4591 Indianola Avenue
Columbus, Ohio 43214
Telephone: 614-261-9581
Facsimile: 614-262-5732
Email: Klosdhesq@aol.com
Counsel for Plaintiff

## JURY DEMAND

Plaintiff hereby demands trial by jury in all matters triable to a jury.

Respectfully Submitted,

*s/Daniel H. Klos*
Daniel H. Klos (0031294)
4591 Indianola Avenue
Columbus, Ohio 43214
Telephone: 614-261-9581
Facsimile: 614-262-5732
Email: Klosdhesq@aol.com
Counsel for Plaintiff